IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| B-50.COM, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-1994-D |
| VS. | § | |
| | § | |
| INFOSYNC SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant InfoSync Services, LLC ("InfoSync") moves for partial summary judgment dismissing the claims of plaintiff B-50.com, LLC ("B-50") for contributory infringement and inducement of infringement asserted under claim 1 of United States Patent No. 6,633,851 ("the '851 patent"). InfoSync maintains that B-50 cannot prove that InfoSync's accused product—RightsViewWeb ("RVW")—infringes the '851 patent. The court construes a claim term that it declined to construe in its *Markman* ruling, revises its construction of another claim term, and denies InfoSync's motion for the reasons that follow.

I

Because the background facts and pertinent legal standards are set out in the court's *Markman* claim construction decision, *see B-50.com, LLC v. Infosync Services, LLC*, 2012 WL 4866508, at *1-2 (N.D. Tex. Oct. 15, 2012) (Fitzwater, C.J.) ("*B-50 I*"), the court will limit its discussion of the background facts and legal standards to what is necessary to

understand today's decision.[1]  B-50 holds the '851 patent, which recites "[a] method of generating custom reports based on restaurant point-of-sale data transferred between multiple remote computing devices and a central computing device."  D. 5-15-13 App. 90.[2]  B-50 contends that InfoSync's accused product—RVW—performs all the steps of claim 1 of the '851 patent, and it asserts claims for contributory infringement and inducement of infringement.  InfoSync moves for partial summary judgment dismissing B-50's claims, contending that B-50 cannot prove that RVW directly infringes claim 1 (specifically, elements 1(b) (third indented paragraph) and 1(d)).

## II

"Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) (citing Fed. R. Civ. P. 56); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement."  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Direct infringement does not arise unless "the accused device . . . contain[s] each

---

[1]In deciding this motion, the court views the evidence in the light most favorable to B-50 as the summary judgment nonmovant and draws all reasonable inferences in its favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]For clarity, the court will cite the parties' briefs and appendixes by the date filed.

limitation of the claim, either literally or by an equivalent." *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1351 n.2 (Fed. Cir. 2013). Thus "a court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

III

InfoSync first moves for partial summary judgment based on claim 1(b) (third indented paragraph).

A

The third indented paragraph of claim 1 (B) states:

> displaying on a page one or more operative data-entry fields configured to process a selection operation from the restaurant-industry user that specifies one or more dates or date ranges, wherein the operative data-entry fields *are substantially only those required to obtain* the dates or date ranges associated with the at least one specified report format[.]

D. 5-15-13 App. 90 (emphasis added). In *B-50 I* the court construed "operative data-entry fields" to mean "places on a screen where the restaurant-industry user may enter data for a selection operation." *B-50 I*, 2012 WL 4866508, at *10. The court declined to construe "substantially only those required to obtain," reasoning that it has an ordinary meaning. *Id.* at *9.

InfoSync contends that RVW does not infringe claim 1 because RVW does not

- 3 -

display the "operative data-entry fields," as required by claim 1(b) (third indented paragraph). InfoSync posits that the "substantially only" clause in claim 1(b) (third indented paragraph) requires that there be an individual page containing the operative data-entry fields described in that paragraph, and that the display of any of the operative data entry fields described in claim 1(b) (first and second indented paragraphs) on the same page as the data-entry fields described in claim 1(b) (third indented paragraph) means that the limitations in claim 1(b) are not met. In other words, InfoSync argues that claim 1(b) requires an individual page that contains date-range fields and nothing else. According to InfoSync, if the page displaying the date-range fields also displays any other data-entry fields—for example, data-entry fields that allow the user to select restaurants from which to cull data, or to select the report's format—the accused product does not contain all the limitations of the '851 patent. Because RVW includes a page with date-range fields as well as restaurant selection and report format fields, RVW contends that B-50's infringement claim must fail.

B-50 maintains that InfoSync's argument fails for at least four reasons, including that InfoSync is mistaken in its interpretation of claim 1(b) (third indented paragraph). B-50 contends that "substantially only" relates back to "operative data-entry fields configured to process a selection operation . . . that specifies one or more dates or date ranges," and that it does not mean that the date-range field must be the only operative data entry field on a single page. B-50 posits that, read properly and in context, the language of claim 1(b) (third indented paragraph) means that there are one or more operative data entry fields dedicated exclusively to obtaining dates or date ranges. It maintains that the summary judgment

- 4 -

evidence shows that RVW contains this claim limitation.

B

In *B-50 I* the court declined to construe "substantially only those required to obtain." Having considered the parties' dispute in the context of InfoSync's motion for partial summary judgment, however, the court concludes that this term should be construed. *Cf., e.g., Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*, 2011 WL 1330782, at *5 (E.D. Wis. Apr. 7, 2011) (revising claim construction *sua sponte* in order granting summary judgment for non-infringement), *vacated in part on other grounds*, ___ Fed. Appx. ___, 2013 WL 4269406 (Fed. Cir. Aug. 16, 2013).[3]  Based on this construction, the court also holds that InfoSync is not entitled to summary judgment.

1

The court first considers the language of claim 1.  InfoSync argues that the only way to give effect to the second clause of claim 1(b) (third indented paragraph) is to construe it to mean that "the only 'operative data entry field' displayed on the page is that which enables the user to select a date or date range."  D. 7-3-13 Br. 9.  InfoSync argues that any other interpretation will render the clause meaningless.  The court disagrees.  The first clause of

---

[3]As the court will explain, it disagrees with both parties' proposed constructions. Because the court "has an independent obligation to determine the meaning of the claim[], notwithstanding the views asserted by the adversary parties," *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995); *see also Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012) ("[A] district court may construe the claims in a way that neither party advocates[.]"), it will construe the term in a manner that neither side advocates.

claim 1(b) (third indented paragraph) requires that a page display one or more operative data-entry fields that are configured to allow the user to enter specific dates or date ranges, and that cause the generated report to contain data only from the dates the user specifies. The second clause can be read to further require that the data-entry fields displayed are substantially only those required for the particular report type that the user selects.[4]

The court considers whether any other claim language is relevant to the dispute between B-50 and InfoSync. There are three relevant "on a page" limitations contained in claim 1(b), *see* D. 5-15-13 App. 90, that do not support InfoSync's proposed construction. The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (collecting cases); *see* D. 5-15-13 App. 90 (containing transitional phrase "comprising"). This manner of interpreting the indefinite article "a" is not "merely . . . a presumption or even a convention" but a "rule." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). "The exceptions to this rule are extremely limited" and are only applied when "the language of the claims themselves, the specification, or the prosecution history *necessitate* a departure from the rule." *Id.* at 1343 (emphasis added). InfoSync has not pointed the court to any claim language that necessitates a departure from

---

[4]Although the court concludes below that the specification and preferred embodiment support this reading, the court only holds here that InfoSync's interpretation is not the only possible construction that gives effect to the second clause of claim 1(b) (third indented paragraph).

this rule, and the court concludes that there is no basis to do so.[5]  Thus the court must read

the three "on a page" clauses as reciting that the information described in claim 1(b) must be

"displayed on one or more pages."  This reading does not support InfoSync's proposed

construction.

2

The court now considers claim 1 in relation to claim 19.  B-50 argues that the doctrine

of claim construction as applied to claims 1 and 19 refutes InfoSync's interpretation of claim

1.  It contends that because "dependent Claim 19 discloses a method where the functions

listed in Claim 1(b)(1)-(3) occur on different pages, this suggests that those functions as first

described in Claim 1 can all occur on the same page." P. 6-19-13 Br. 17 (emphasis omitted).

InfoSync replies that "B-50's argument is premised on the notion that each of the three

'displaying on a page' elements of claim 1 are displayed on different pages." D. 7-3-13 Br.

8.  But InfoSync contends that the data-entry fields described in claim 1(b) (first and second

indented paragraphs) may be displayed on the same page while "Claim 1(b)(iii) . . . explicitly

requires" that the data-entry fields it describes be displayed on a separate page.  *Id.*  Thus

InfoSync maintains that claim 19 depends from claim 1(b) (first and second indented

---

[5]The only claim language that might be read to support InfoSync's proposed construction of claim 1(b) (third indented paragraph) is the phrase, "wherein the restaurant-industry user navigates between one or more of the selection operations using Internet-browser navigation mechanisms[.]" D. 5-15-13 App. 90.  Neither party asks the court to construe this phrase, and the court declines to do so.  But the court notes that this phrase may be read to refer to a user's navigation to different data-entry fields displayed on the same page. *See, e.g.,* D. 5-15-13 App. 90 (describing how users can scroll to different portions of the same screen using a "vertical scroll bar").

paragraphs) but is not relevant in construing claim 1(b) (third indented paragraph).

The doctrine of claim differentiation establishes that "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). This presumption "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003). The presumption supplied by the doctrine of claim differentiation "can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong." *Liebel-Flarsheim*, 358 F.3d at 910.

Claim 19 recites "[t]he method of claim 1, wherein displaying the report formats, displaying the remote locations, and displaying the operative data-entry fields occurs on different pages." D. 5-15-13 App. 91. The only meaningful difference between claim 1 and claim 19 is claim 19's limitation that the data-entry fields described in claim 1 be displayed on different pages. Moreover, InfoSync argues that claim 19's limitation should be read into claim 1(b) (third indented paragraph).[6] Thus the presumption created by the doctrine of

---

[6]InfoSync does not argue that claim 19's limitation should be read into claim 1 as a whole, but only into claim 1(b) (third indented paragraph). *Cf. SunRace*, 336 F.3d at 1303. Because claim 19 explicitly refers to claim 1(b) (third indented paragraph) in describing the limitation it adds, the court holds that the strong presumption applied in a case where one party is urging that the limitation in a dependent claim be read into the independent claim applies in this case.

claim differentiation is at its strongest in this case.

In the face of this strong presumption, InfoSync merely asks the court to credit its interpretation of the second clause of claim 1(b) (third indented paragraph).  The court has already concluded that InfoSync's proposed construction of that clause is not the only plausible one.  Thus the court holds that InfoSync has failed to rebut the strong presumption that claim 1, including claim 1(b) (third indented paragraph), does not contain the limitation that "the operative data-entry fields occur[] on different pages."  D. 5-15-13 App. 91.

3

The specification and drawings provide even stronger evidence that InfoSync's proposed interpretation is incorrect.  For example, Figs. 8 and 9 depict two halves of the same "report request screen."  *See* D. 5-15-13 App. 82.  "FIG. 8 illustrates the top half of portion 420" (bold font omitted), an area on the page where users enter data and make selection operations, while "FIG. 9 illustrates the lower half of portion 420."  *Id.* (bold font omitted).  To scroll between the two halves of "420," the user drags the "vertical scroll bar 430" up or down.  *Id.* (bold font omitted).  In Fig. 8, "[r]eport date box 480 accepts the date variables for the requested report, in the format specified by the user."  *Id.* (bold font omitted).  Although Fig. 8 contains only one date-entry field, the specification makes clear that "[d]epending on the report requested, there may be multiple report date fields."  *Id.* Immediately to the right of the "Report Date" box, Fig. 8 depicts a "restaurant selection box 440," *id.* (bold font omitted), that allows the user to select "[g]roups/stores . . . in any combination for each report."  *Id.*  Finally, Fig. 9 depicts the area "510" where the "[d]elivery

- 9 -

method is selected at 510." *Id.* (bold font omitted).  The specification provides that "the delivery method can be either web or e-mail delivery." *Id.*  Figs. 10, 15, 16, and 19 depict report request screens for different report types, but each drawing contains the three data-entry fields included in Figs. 8 and 9.  In other words, Figs. 8, 9, 10, 15, 16, and 19 depict report request screens where each of the selection operations described in claim 1(b) is displayed on a single page.

Together, the language of claim 1, the doctrine of claim differentiation as applied to claims 1(b) and 19, and the specification and drawings demonstrate that InfoSync's suggested limitation for claim 1(b) is incorrect.

4

B-50, on the other hand, maintains that "substantially only those required to obtain" "means simply there are one or more operative data-entry fields dedicated exclusively to obtaining dates or date ranges."  P. 6-19-13 Br. 19.  The court disagrees.

The claim language recites that the data-entry fields dedicated to obtaining dates or date ranges will be "substantially only those required to obtain the dates or date ranges *associated with the at least one specified report format*."  D. 5-15-13 App. 90 (emphasis added).  This suggests both that the claimed method will display data-entry fields dedicated exclusively to obtaining dates or date ranges and that the data-entry fields displayed will be only those required to generate the report type requested by the user.  The specification and drawings confirm this reading of the claim language.  Figs. 8 and 9 are embodiments of a "week-to-date report request screen."  D. 5-15-13 App. 80.  The specification states that

"report date box 480 [in Fig. 8] accepts the date variables for the requested report, in the format specified by the user.  Depending on the report requested, there may be multiple report date fields.  The Week to Date report request of Fig. 8, however, requires only one field."  *Id.* at 82 (bold font omitted).  Fig. 15 "shows [a] Sales Mix Report request screen." *Id.*  Unlike the week-to-date report request screen, "[t]he Sales Mix report . . . ask[s] for four dates—current begin date, current end date, prior begin date, and prior end date."  *Id.* at 83.

5

Based on the claim language, the doctrine of claim differentiation as applied to claims 1(b) and 19, and the specification and drawings, the court concludes that "substantially only those required to obtain" contains no limitation requiring that the selection operation described in claim 1(b) (third indented paragraph) must be the only selection operation on the page.  The court holds that each of the selection operations described in claim 1(b) can be displayed on the same page as either or both of the other selection operations described in claim 1(b).  The court also holds that "wherein the operative data-entry fields are substantially only those required to obtain the dates or date ranges associated with the at least one specified report format" means "wherein the operative data-entry fields are substantially only those required to generate the type of custom report requested by the restaurant industry user."

Based on the foregoing construction and the summary judgment evidence, the court denies InfoSync's motion for partial summary judgment based on claim 1(b) (third indented paragraph).

IV

InfoSync next moves for partial summary judgment based on claim 1(d).

A

In *B-50 I* the court addressed the parties' dispute concerning the construction of the term "to view or obtain" contained in claim 1(d), which states: "enabling the restaurant-industry user to view or obtain the generated custom report using the Internet." P. 6-19-13 App. 90.  Relying on InfoSync's proposed construction, B-50's position that the term was self-explanatory and needed no construction, and the Federal Circuit's decision in *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1330-31 (Fed. Cir. 2001), the court reached the following conclusion based on abbreviated reasoning:

> InfoSync seeks a construction of "to view or obtain" to clarify that it means "to either view or obtain, but not both."  B-50 does not dispute this construction, but instead contends that the phrase is self-explanatory and needs no construction.  The court concludes that the phrase "to view or obtain" should be construed and that it means "to either view or obtain, but not both."

*B-50 I*, 2012 WL 4866508, *10 (internal citation omitted) (citing *Kustom Signals*, 264 F.3d at 1330-31).

InfoSync moves for partial summary judgment on the ground that RVW "enables the user in every instance to view *and* obtain the generated custom report."  D. 7-3-13 Br. at 2-3 (emphasis added).  It maintains that, because RVW "enables the user to both view and obtain the generated custom report," it does not contain the "either view or obtain, but not both" limitation recited in claim 1(d).  B-50 responds that the court's claim construction is "wrong

- 12 -

for two reasons." P. 6-19-13 Br. 20. It contends that *Kustom Signals* does not control the court's construction of "or" because, unlike claim 1(d), the claim in *Kustom Signals* contained "'either or' language." *Id.*[7]

B

1

For the reasons that follow, the court concludes that its abbreviated claim construction in *B-50 I* should be revised, *see, e.g., Mikkelsen Graphic Eng'g*, 2011 WL 1330782, at *5, and, based on the revised construction of "to view or obtain," that InfoSync is not entitled to partial summary judgment.

The claim and specification neither define the word "or" nor do they indicate that B-50 used the word in a specialized fashion. And there is no intrinsic evidence showing that B-50 used the word "or" in claim 1(d) as a "technical term[] of art." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("*Brown II*"); *see also Kustom Signals*, 264 F.3d at 1331 (stating that intrinsic evidence made clear that "or" was used "in its ordinary meaning"). The rules that the court follows when construing patent terms are set out in *B-50 I*, 2012 WL 4866508, at *1-2, and the court applies them when construing this term.

2

"Authorities agree that . . . *or* has an inclusive sense as well as an exclusive sense." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011). In its inclusive

---

[7]B-50 also contends that the court's construction in *B-50 I* contains no time limitation. The court need not reach this argument.

sense, "or" means "A or B, or both." *Id.* In its exclusive sense, "or" means "A or B, but not both." *Id.* Although "or" is used in both senses in common usage, "[t]he meaning of *or* is usually inclusive." *Id.* (quoting Scott J. Burnham, *The Contract Drafting Guidebook* 163 (1992)) (internal quotation marks omitted); *see also Brown v. 3M*, 2000 U.S. Dist. LEXIS 21630, at *11-12 (D. Ariz. Aug. 10, 2000) ("*Brown I*") ("'Or' can be inclusive, describing a list of alternative things in which one may choose one option or any combination of alternative options. It can also be exclusive, forcing one to choose only one option from the list of things that it conjoins."), *aff'd*, 265 F.3d 1349 (Fed. Cir. 2001).

InfoSync argues as if the court must choose between construing "or" in its exclusive sense or construing it to mean "and." But the Federal Circuit has affirmed decisions construing "or" in both its inclusive and exclusive senses. *Compare Brown II*, 265 F.3d at 1352, *with Kustom Signals*, 264 F.3d at 1331. Moreover, both senses of "or" are commonly used. *See* Garner, *supra*, at 639. In fact, the inclusive use of "or" is the *more* common. *See id.* Because "or" is commonly used in both its inclusive and exclusive senses, the court must examine the claim language and the specification and drawings to determine the plain meaning of "or" in claim 1(d).

3

Claim 1(d) states that it "enabl[es] the restaurant-industry user to view or obtain the generated custom report using the Internet." D. 5-15-13 App. 90. The claim language does not contain an "either . . . or" clause or otherwise indicate that users of the claimed method must "select" one, and only one, of two options. *Cf. Kustom Signals*, 264 F.3d at 1329-31.

The specification contains general descriptions of the ways a user can view or obtain a report.  The specification states that "[c]ommunication relay 40," depicted in Fig. 1, "is embodied in the Internet in its various forms and definitions, including e-mail and other communication mechanisms.  Of course, the invention contemplates using future generations of the Internet, e-mail . . . and other new forms of electronic communication that may arise." D. 5-15-13 App. 80 (bold font omitted).  The specification also provides that a "custom report can be communicated by direct display at one of the computing devices, by e-mail to a designated party, otherwise over the Internet, in hard copy, *or* in the other ways described above."  *Id.* at 81 (emphasis added).[8]  This latter phrase appears to use "or" in its inclusive sense.  The natural reading of this part of the specification is that the method will provide users several ways to receive reports using the Internet.  It does not convey that users must choose one, and only one, of these options.

The specification also contains specific descriptions of the ways a user can view or obtain a report.  For instance, if a user requests a report via web delivery, the specification provides that the user can open the report by "click[ing]" the report's "description" in the "[d]escription column 280." D. 5-15-13 App. 82 (bold font omitted).  After the user clicked the report, it would "appear[]" in the "lower portion of screen 210" (bold font omitted), which is embodied in Fig. 6.  *Id.*  From there, the user could "click[]" a "print button," which

---

[8]As the court noted in its *Markman* opinion, the specification makes clear that "as technology advances, the invention likely will use other modes of communication and interaction with the Internet."  *B-50 I*, 2012 WL 4866508, at *3 (quoting '851 patent specification now found at D. 5-15-13 App. 81).

would open a "[p]rint parameters" page. *Id.* In this way, the user could view and then obtain the report using the Internet. Instead of clicking on the report immediately, the user could "click[]" the "forward button 230" (bold font omitted) in the report detail area. After the user clicked the forward button, the specification provides that the "report will be forwarded by e-mail or other desired communication method." *Id.* If the user then opened the e-mail attachment, the user would have obtained and then viewed the report. Instead of that, the user could open and view the report immediately, and *then* click the forward button, and later open the e-mail attachment. In this way, the user would have viewed, then obtained, then viewed the report using the Internet. These are just some of the combinations enabled by claim 1(d).

This intrinsic evidence demonstrates that "or" as used in claim 1(d) should be construed in its inclusive sense. The claimed method enables users to view a report using the Internet, to obtain a report using the Internet, or to do both in whatever order the user chooses. Nothing in the claim or specification and drawings indicates that users must choose one or the other, but not both.

4

Based on the claim language, and the specification and drawings, the court concludes that claim 1(d) means "enabling the restaurant industry user to view or obtain the generated custom report, or both, using the Internet." The court "is not replacing 'or' with 'and.'" *Brown I*, 2000 U.S. Dist. LEXIS 21630, at *11. Instead, the court concludes that "or" as used in claim 1(d) is used in its primary, inclusive sense.

- 16 -

*   *   *

Based on the foregoing term constructions and the summary judgment evidence, the court holds that a reasonable jury could find that RVW directly infringes the '851 patent. The court therefore denies InfoSync's motion for partial summary judgment.

**SO ORDERED**.

January 27, 2014.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE