IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| B-50.COM, LLC, | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:10-CV-1994-D |
| VS. | § | |
| | § | |
| INFOSYNC SERVICES, LLC, | § | |
| | § | |
| Defendant-counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this patent case, each party moves for partial summary judgment, and one party moves to strike the report of the other party's damages expert. Among the questions presented is whether (and how) the Federal Circuit's "control or direction" test applies for determining direct infringement of the method claim at issue, which, in turn, impacts plaintiff-counterdefendant's claim for active inducement of patent infringement. For the reasons that follow, the court grants partial summary judgment holding that defendant-counterplaintiff does not "control or direct" its customers, and it denies summary judgment on all other grounds. The court declines to strike the report of plaintiff-counterdefendant's damages expert.

I

The court assumes that the parties are familiar with its prior opinions in this case.[1]  It therefore focuses on the background facts and procedural history that are pertinent to the motions addressed in this memorandum opinion and order.

Plaintiff-counterdefendant B-50.com, LLC ("B-50") holds United States Patent No. 6,633,851 ("the '851 patent"), entitled, "Systems and Methods for Generating Custom Reports Based on Point-Of-Sale Data."  The '851 patent recites "[a] method of generating custom reports based on restaurant point-of-sale data transferred between multiple remote computing devices and a central computing device." *B-50.com, LLC v. InfoSync Servs., LLC*, 2012 WL 4866508, at *1 (N.D. Tex. Oct. 15, 2012) (Fitzwater, C.J.) (citation omitted).[2] Defendant-counterplaintiff InfoSync Services, LLC ("InfoSync") offers a hosted web-based reporting service—the RightViewWeb ("RVW") reporting application—that permits its customers to access data that can be used for accounting, payroll, and/or operational purposes and to create custom reports.

---

[1]*See B-50.com, LLC v. InfoSync Servs., LLC*, 2014 WL 285096 (N.D. Tex. Jan. 27, 2014) (Fitzwater, C.J.); *B-50.com, LLC v. InfoSync Servs., LLC*, 2012 WL 4866508 (N.D. Tex. Oct. 15, 2012) (Fitzwater, C.J.); *B-50.com, LLC v. InfoSync Servs., LLC*, 2011 WL 1043456 (N.D. Tex. Mar. 22, 2011) (Fitzwater, C.J.).

[2]Because both parties move for summary judgment, the court will recount the evidence that is undisputed, and, when necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. Oct. 25, 2010) (Fitzwater, C.J.) (citing *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

B-50 alleges that InfoSync either performs the steps contained in claim 1 of the '851 patent or it directs and/or controls third parties who perform these steps.[3] B-50 sues InfoSync to recover on a claim for active inducement of patent infringement, under 35 U.S.C. § 271(b), and a claim for contributory patent infringement, under 35 U.S.C. § 271(c). InfoSync asserts several affirmative defenses (including patent invalidity), and it counterclaims for a declaration of noninfringement and a declaration that the '851 patent is invalid. In a prior opinion in this case, the court denied InfoSync's motion for partial summary judgment, which rested on the premise that B-50 could not prove that RVW directly infringes elements 1(b) (third indented paragraph) and 1(d) of claim 1. *B-50.com, LLC v. InfoSync Servs., LLC*, 2014 WL 285096, at *8 (N.D. Tex. Jan. 27, 2014) (Fitzwater, C.J.).

There are five motions pending for decision: B-50 and InfoSync have each filed a motion and supplemental motion for partial summary judgment,[4] and InfoSync has filed a motion to strike the report of B-50's damages expert. In B-50's initial motion, it seeks summary judgment establishing that RVW infringes every element of claim 1, that InfoSync and its customers perform every step of claim 1, or that InfoSync has induced infringement of the steps that it does not perform. In InfoSync's initial motion, it moves for partial

---

[3]Claim 1 of the '851 patent is the only independent claim. All other claims are either dependent on claim 1 or dependent on another claim that is dependent on claim 1.

[4]B-50 has properly styled its motion and supplemental motion as seeking *partial* summary judgment. InfoSync should have done so as well. *See* N.D. Tex. Civ. R. 56.3(c) ("If a moving party seeks summary judgment on fewer than all claims or defenses, the motion must be styled as a motion for partial summary judgment.").

summary judgment on B-50's claim for active inducement of patent infringement.  InfoSync

maintains that none of the customized reports created through the operation of RVW is

created in accordance with each and every step set forth in claim 1; that, even if they are,

InfoSync had a good faith belief that RVW did not infringe claim 1 and therefore lacked the

necessary specific intent to induce infringement; and that claim 1 is invalid under 35 U.S.C.

§ 112 and § 132 because the court's construction of claim 1 renders the claim indefinite.[5]

While the parties' summary judgment motions were pending, the Supreme Court

decided *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, ___ U.S. ___, 134 S.Ct. 2111

(2014).  The parties jointly requested that the court permit them to file amended or

supplemental summary judgment briefs, stating that *Limelight* had "made a material change

in the law regarding infringement of method claims, and the elements needed to prove

infringement."  Joint Mot. for Lv. to File Am. Mots. at 1.  After obtaining leave of court, the

parties filed supplemental motions for partial summary judgment.

In support of B-50's supplemental motion, it contends that RVW infringes every step

---

[5]As the court explains next, after the Supreme Court decided *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, ___ U.S. ___, 134 S.Ct. 2111 (2014), the parties jointly requested leave to file amended or supplemental summary judgment briefs.  Although InfoSync states in its supplemental briefing that it is incorporating the grounds of its initial motion into its supplemental motion, the parties' supplemental briefing focuses almost exclusively on their positions concerning the effect of the *Limelight* decision.  Neither party specifically addresses in the supplemental briefing InfoSync's arguments raised in its initial motion regarding intent or invalidity.  Because it is unclear whether the parties intended in the supplemental briefing to litigate all the grounds for summary judgment that InfoSync raised in its initial motion, and in the absence of adequate briefing on these grounds, the court will not address the grounds of InfoSync's initial motion.

of claim 1, that InfoSync exercises "control or direction" over its customers, and that, with respect to operational reports, InfoSync's customers perform each step of claim 1. Accordingly, B-50 maintains that either InfoSync or its customers perform each of the steps of claim 1, and, if InfoSync's customers perform each step of claim 1, the court need not address the "control or direction" element; but if InfoSync performs any step of claim 1, there is abundant evidence that InfoSync controls or directs its customers when they perform the remaining steps, and B-50 is therefore entitled to judgment as a matter of law that RVW infringes every element of claim 1 and that InfoSync has induced infringement of claim 1.

In InfoSync's supplemental motion for partial summary judgment, it relies on the grounds set forth in its initial motion,[6] and it points to the absence of evidence of direct infringement under § 271(a) that is necessary to establish liability for induced infringement under § 271(b). InfoSync maintains that there is no evidence either that its customers are acting as its agents when they perform certain steps of claim 1, or that its customers are contractually obligated to InfoSync to perform these steps. It contends that it cannot be held liable for inducing infringement of claim 1 because there has been no direct infringement of claim 1.

---

[6]*See supra* note 5.

II

A party's summary judgment burden depends on whether it is addressing a claim or defense for which the party will have the burden of proof at trial. To be entitled to summary judgment on a claim on which the nonmovant will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).[7] An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet

---

[7]This court is bound by the law of the Federal Circuit regarding patent matters, but it follows Fifth Circuit law regarding procedural issues. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984) ("We, therefore, rule, as a matter of policy, that the Federal Circuit shall review procedural matters, that are not unique to patent issues, under the law of the particular regional circuit court where appeals from the district court would normally lie."), *overruled on other grounds by Richardson-Merrell Inc. v. Koller*, 472 U.S. 424 (1985); *see also Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1360 (Fed. Cir. 2001) ("We apply regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not: (1) pertain to patent law; (2) bear an essential relationship to matters committed to our exclusive control by statute; or (3) clearly implicate the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." (citations and internal quotation marks omitted)).

this burden.  *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense on which the party moving for summary judgment will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court first considers B-50's motion for partial summary judgment.[8]

In its supplemental motion, B-50 contends that RVW infringes every step of claim 1, that InfoSync exercises "control or direction" over its customers, and that, with respect to operational reports, InfoSync's customers perform each step of claim 1.  B-50 maintains that

---

[8]The court will address B-50's supplemental motion rather than its initial motion, although B-50 cannot satisfy the beyond peradventure standard as to either.  B-50 relies in its initial motion on grounds that are not reurged in support of the supplemental motion.  And B-50 also relies in its initial motion on *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc) (per curiam), *rev'd*, ___ U.S. ___, 134 S.Ct. 2111 (2014), which the Supreme Court reversed in *Limelight*.

- 7 -

either InfoSync or its customers perform each of the steps of claim 1, and, if InfoSync's customers perform each step of claim 1, the court need not address the "control or direction" element; but if InfoSync performs any step of claim 1, there is abundant evidence that InfoSync controls or directs its customers when they perform the remaining steps, and B-50 is therefore entitled to summary judgment that RVW infringes every element of claim 1 and that InfoSync has induced infringement of claim 1.

Because B-50 seeks partial summary judgment establishing (or effectively establishing) a claim or element on which it will have the burden of proof at trial, it must satisfy the "heavy" beyond peradventure standard.[9]  Because it has not done so, the court denies B-50's motion for partial summary judgment.[10]

IV

The court now considers InfoSync's supplemental motion for partial summary judgment.  This motion is governed by the summary judgment standard that permits InfoSync to point to the absence of evidence to support B-50's claim for active inducement of patent

---

[9]InfoSync's allegation that claim 1 of the '851 patent is invalid—whether asserted as a counterclaim or as an affirmative defense—is also governed by the beyond peradventure standard because at trial InfoSync will have the burden of proof.  For the reasons explained *supra* at note 5, the court will not address whether InfoSync is entitled to summary judgment on this basis.  But were it to reach this question, it would conclude that InfoSync has not satisfied the heavy beyond peradventure standard.

[10]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

infringement, thereby shifting to B-50 the burden of producing evidence that creates a genuine issue of material fact regarding this claim.

## A

InfoSync maintains that it cannot be held liable under § 271(b) for inducement to infringe absent proof that direct infringement under § 271(a) has occurred; it contends that B-50 cannot establish direct infringement without proving either that InfoSync's customers are acting as its agents when they perform certain of the steps of claim 1, or that its customers are contractually obligated to InfoSync to perform the steps; and it points to the absence of evidence that either of these circumstances exists in this case.[11]  InfoSync primarily relies on

---

[11]There is support in the Federal Circuit for the proposition that a party cannot induce its own infringement.  *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement."); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) ("[A] patentee must show that an alleged infringer knowingly induced *another* to commit an infringing act to establish induced infringement under section 271(b)." (emphasis added, citations omitted)); *C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc*., 911 F.2d 670, 675 (Fed. Cir. 1990) ("A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting *another's* direct infringement" (second emphasis added, citation omitted)); *see also Commil USA, LLC v. Cisco Sys., Inc*., 720 F.3d 1361, 1373 (Fed. Cir. 2013) (Newman, J., dissenting) ("The inducement statute is designed to allow remedy against an entity that provides an infringing product or method to direct infringers, *but is not itself a direct infringer*." (emphasis added)).  Under this authority, it would appear that InfoSync cannot be held liable for active inducement of patent infringement unless B-50 is attempting to prove the direct infringement predicate based only on acts that InfoSync did not itself commit and/or for which it cannot be held liable (leaving only acts for which InfoSync could not be held liable as a direct infringer, such as those committed by customers whom InfoSync neither controls nor directs).  InfoSync does not rely on this reasoning, however, to establish a right to summary judgment, so the court will not consider whether it would have merit had InfoSync relied on it.

two decisions to establish its entitlement to partial summary judgment: *Limelight* and *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

In *Limelight* the Supreme Court, in pertinent part, restated the settled and undisputed proposition "that liability for inducement must be predicated on direct infringement." *Limelight*, 134 S.Ct. at 2117.  The Court assumed, without deciding, that the Federal Circuit had correctly held in *Muniauction* "that a method's steps have not all been performed as claimed by the patent unless they are all attributable to the same defendant, either because the defendant actually performed those steps or because he directed or controlled others who performed them." *Id.* (citing *Muniauction*, 532 F.3d at 1329-30).

In *Muniauction* the Federal Circuit applied its decision in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), which "clarified the proper standard for whether a method claim is directly infringed by the combined actions of multiple parties." *Muniauction*, 532 F.3d at 1329 (citation omitted).[12]  It was undisputed in *Muniauction* that no single party performed every step of the asserted method claims. *Id.* at 1328.  The Federal Circuit noted that "[t]he law of this circuit is axiomatic that a method claim is directly infringed only if each step of the claimed method is performed." *Id.*  It discussed its decision in *BMC Resources*, explaining that the analysis in that case "was founded on the proposition

---

[12]The Supreme Court declined in *Limelight* to review the merits of *Muniauction*.  The Court explained that the question on which it had granted *certiorari* did not involve § 271(a), and that this "important issue" had not been adequately briefed. *Limelight*, 134 S.Ct. at 2120. The Court also noted that its "decision on the § 271(b) question necessitates a remand to the Federal Circuit, and on remand, the Federal Circuit will have the opportunity to revisit the § 271(a) question if it so chooses." *Id.*

that direct infringement requires a single party to perform every step of a claimed method." *Id.* at 1329.   The *Muniauction* panel noted that *BMC Resources* "recognized a tension between this proposition and the well-settled rule that 'a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf.'"   *Id.* (quoting *BMC Res.*, 498 F.3d at 1379).   The panel then concluded:

> Accordingly, where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises "control or direction" over the entire process such that every step is attributable to the controlling party, i.e., the "mastermind."   At the other end of this multi-party spectrum, mere "arms-length cooperation" will not give rise to direct infringement by any party.

*Id.* (quoting *BMC Res.*, 498 F.3d at 1371, 1380-81).   The panel explained that, "[u]nder *BMC Resources*, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method."   *Id.* at 1330.

Against the backdrop of *Limelight* and *Muniauction*, InfoSync contends that the actions of its customers cannot be combined with its own actions because there is an absence of evidence that its customers are acting as its agents when they perform certain steps of claim 1, or that its customers are contractually obligated to perform the steps.

B-50 responds that InfoSync's argument is based on a misreading of *Limelight*, and that the "agency or contractual obligation" test is no longer good law.   It maintains that, although the Supreme Court in *Limelight* assumed without deciding that the "control or direction" test of *Muniauction* is correct, the Court did not adopt the "agency or contractual

liability" test as the only way of proving direction or control. B-50 discusses at some length in its brief why it maintains that neither the Supreme Court nor the Federal Circuit currently follows the "agency or contractual liability" test, and it maintains that this court should adopt the vicarious liability standard used in copyright infringement cases. In a footnote, B-50 posits that the "control or direction" test only applies if the elements of claim 1 are performed by multiple actors, and if they are performed by a single actor (InfoSync's customers), the court need not consider the "control or direction" test at all. B-50 contends that there is evidence of both single-actor infringement of claim 1 and multiple-actor infringement. In a footnote, it states that it will not repeat its factual arguments regarding single- and multiple-actor infringement but will instead address only the arguments raised in InfoSync's supplemental motion and brief and the *Limelight* decision.

B-50 points out that, under *Muniauction*, "the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330 (citing *BMC Res.*, 498 F.3d at 1379). B-50 maintains that, contrary to InfoSync's argument, imposition of vicarious liability under the common law has not been limited to situations involving principal-agent relationships or express contractual undertakings. B-50 cites the standard for vicarious liability for copyright infringement; it relies on a law journal article that, following *Muniauction*, advocates applying this standard for establishing vicarious liability for patent infringement under § 271(a); and it contends that, under the standard for vicarious liability for direct

- 12 -

infringement of a copyright, vicarious liability for direct infringement of a patent is supported where the accused infringer teaches or instructs the other party and derives an obvious and direct financial benefit from the other party's infringing conduct.  B-50 posits that, to the extent the court concludes that B-50 must prove that InfoSync exercises "control or direction" over its customers, the court should adopt the test for vicarious liability for direct infringement of a copyright; and it maintains that it has introduced sufficient evidence that InfoSync "taught or instructed" its customers on how to perform the steps of claim 1, and that InfoSync's contracts demonstrate that it obtains a direct financial benefit as a result of its customers' infringing use.  B-50 therefore contends that InfoSync's motion for partial summary judgment should be denied.

B

There is no question that the Federal Circuit follows the "control or direction" test, and that this "standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method."  *Muniauction*, 532 F.3d at 1330 (citing *BMC Res.*, 498 F.3d at 1379); *see also, e.g., Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (explaining "control or direction" standard).  In the Federal Circuit, "the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party."  *BMC Res.*, 498 F.3d at 1379 (citing *Engle v. Dinehart*, 213 F.3d 639 (5th Cir. 2000) (unpublished decision)).  *BMC Resources* holds "that where steps of a method claim are

- 13 -

performed by multiple parties, the entire method must be performed at the control or direction of the alleged direct infringer." *Muniauction*, 532 F.3d at 1323 (citing *BMC Res.*, 498 F.3d at 1380-81).

In B-50's opposition to InfoSync's motion, it attempts to satisfy the "control or direction" test based on evidence that InfoSync teaches or instructs its customers how to perform the steps of claim 1 and directly benefits financially from its customers' infringing use. B-50's evidence that InfoSync teaches or instructs its customers how to perform the steps of claim 1 and directly benefits financially from the customers' infringing use can be summarized as follows. InfoSync provides its customers with detailed instructions on how to log in to the system, how to select a year or period for a report, how to select remote locations or "cost centers," how to run and open the selected report, and how to navigate through the selected report. And Infosync's Outsourcing Services Agreement provides, "In exchange for the provision of the Services, Client will pay InfoSync according to the cost schedule in Attachment B." P. 7-21-14 Br. 9 (quoting David Oden Supp. Decl. Ex. 1).[13]

---

[13]In support of its June 26, 2014 supplemental brief, B-50 also includes evidence that InfoSync maintains strict control over its RVW system, never allowing its customers to access the system to make changes, and evidence that the RVW system requires the user to perform some steps in order to view or obtain a custom report. B-50 argues that "[t]he fact that the system is set up so that an RVW user must perform the steps demonstrates that InfoSync, as the architect of RVW, both controls and directs the users who must perform the steps of the patent if they use the system." P. 6-26-14 Br. 41.

C

The dispositive question is whether B-50's evidence—accepted as true at the summary judgment stage—is sufficient to enable a reasonable jury to find that InfoSync controls or directs each party who performs a necessary step of the method at issue. Although the Federal Circuit has not decided this precise question, its decisions applying the "control and direction" test lead this court to conclude that B-50's evidence is insufficient as a matter of law.

In *Muniauction* the plaintiff failed to identify any theory under which the defendant might be vicariously liable for the actions of the third parties. *Muniauction*, 532 F.3d at 1330. But as pertinent here, the panel specifically held that the plaintiff could not satisfy the "control or direction" test based only on evidence that the defendant controlled access to its Internet-based bond-bidding system and instructed users of the system on its use. *Id.* ("That [the defendant] controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement.").

In *Aristocrat Technologies* the plaintiff contended that the defendant controlled or directed the behavior of players of a gaming machine by providing free credits to them to induce them to use the machines. *Aristocrat Techs.*, 709 F.3d at 1362. On appeal, the plaintiff contended that the player's entire gaming experience was dictated by the defendant's programming of the gaming machine and that the defendant caused the player to make a wager and activate a user interface, meaning that the player's actions were the natural, ordinary, and reasonable consequences of the defendant's conduct. *Id.* at 1362-63. The

panel held that Federal Circuit law did not recognize this proposed test, and that, under the law of the circuit,

> [o]ne party's direction or control over another in a principal-agent relationship or like contractual relationship operates as an exception to this general rule, but absent that agency relationship or joint enterprise, we have declined to find one party vicariously liable for another's actions.

*Id.* at 1363.[14]  Because the defendant had no such relationship with the player, neither was the agent of the other, and the panel could discern no theory under which one would be vicariously liable for the other's actions, the court concluded that the "control or direction" test was not satisfied.  *Id.*  It therefore affirmed the district court's grant of summary judgment of noninfringement.  *Id.*

In *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117 (Fed. Cir. 2013), the panel acknowledged that the "control or direction" test

> is a fact-specific inquiry; relevant considerations include whether the accused direct infringer "provides instructions or directions" to another entity for performing steps of the patented process or, on the other hand, "contract[s] out steps of a patented process to another entity."

*Id.* at 1122 (quoting  *BMC Res.*, 498 F.3d at 1381).  The Federal Circuit nevertheless agreed with the district court that the defendant did not control or direct the performance of each

---

[14]This opinion, as do others of the Federal Circuit that post-date its *en banc* decision in *Akamai Technologies*, 692 F.3d 1301, cites *Akamai* when addressing the "control or direction" test.  The fact that *Akamai* was reversed does not affect this court's analysis, however, because the Supreme Court did not disturb the law of the Federal Circuit in this respect.  *See supra* note 12.

step of the claimed method. *Id.*

> Although certain steps of [the plaintiff's] claimed method may be performed by individuals using [the defendant's] system, that does not equate to direct infringement or joint direct infringement because [the defendant] does not exercise direction or control over users of its websites. [The defendant's] computer does not select boundaries; it just loads a map after a user provides specific instruction as to his or her geographic area of interest; *i.e.*, [the defendant's] computer does not "choose" the neighborhood within the county, the user makes that selection, and then the computer just retrieves a map based on the programmed coordinates for that neighborhood.

*Id.* at 1122-23.[15]

In *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374 (Fed. Cir. 2012), in order to establish direct infringement, it was necessary to prove that voters who used the plaintiff's method for voting were controlled or directed by the defendants. *Id.* at 1383. On appeal, the plaintiff argued that because it is axiomatic that all entities who conduct elections must necessarily be in control of their election processes, the computer program of the defendants' accused system controlled all of the voter's actions to complete the process of voting. *Id.* The Federal Circuit rejected this argument. *Id.* at 1384. It concluded that, at most, the record showed that the defendants provided instructions on how to use their systems. Citing and quoting *Muniauction*, the panel held that "the fact that an accused infringer 'controls access to its system and instructs [others] on its use is not sufficient to incur liability for direct infringement.'" *Id.* (citing and quoting *Muniauction*,

---

[15]In *Move* the panel vacated the district court's grant of summary judgment on joint direct infringement, but its basis for doing so is immaterial here.

- 17 -

532 F.3d at 1330).

In *Travel Sentry, Inc. v. Tropp*, 497 Fed. Appx. 958 (Fed. Cir. 2012), an unpublished opinion, the Federal Circuit addressed whether the defendant controlled or directed the Transportation Security Administration's ("TSA's") performance of the additional steps of the method at issue. *Id.* at 965-66. This question turned on an analysis of the memorandum of understanding ("MOU") between the defendant and the TSA. *Id.* at 966. The panel held that the district court correctly concluded from the MOU that the defendant neither controlled nor directed the TSA's performance of two steps of the asserted claims, and that the defendant did not direct the TSA in its performance of these steps. The panel quoted its conclusion in *Muniauction* that "an accused infringer that merely 'controls access to its system and instructs [others] on its use' is not liable for direct infringement." *Id.* (quoting *Muniauction*, 532 F.3d at 1330). And it held that the defendant's actions under the MOU amounted to no more than that. *Id.* The court also noted that the plaintiff made no attempt to distinguish *Muniauction* from the MOU's provision stating that the defendant would provide the TSA with all necessary screener training materials. It concluded that the plaintiff "fail[ed] to refute the district court's determination that the relationship between [the defendant] and TSA 'is precisely the type of relationship which the Federal Circuit in *Muniauction* deemed inadequate to support a claim of direct infringement.'" *Id.* (quoting district court opinion).

The foregoing Federal Circuit decisions support the conclusion that InfoSync does not control or direct the performance of each step of the method of claim 1. The court is aware

of no case that supports B-50's position.  InfoSync is therefore entitled to partial summary judgment holding that it does not control or direct its customers' performance of any of the steps of claim 1.

D

Although InfoSync is entitled to partial summary judgment that it does not control or direct its customers' performance of any of the steps of claim 1, it is not entitled to dismissal of B-50's claim for active inducement of patent infringement.  As B-50 points out in its response to InfoSync's supplemental motion, InfoSync can still be held liable for inducement to infringe if InfoSync's customers perform all the steps of the method of claim 1.  But InfoSync does not move for partial summary judgment on this basis.  Instead, InfoSync limits its arguments to whether B-50 can prove direct infringement under § 271(a) by establishing that InfoSync's customers are acting as its agents or are contractually obligated to InfoSync when they perform certain steps of claim 1.

Accordingly, although the court grants InfoSync's motion to the extent of holding that InfoSync does not direct or control its customers, the court denies InfoSync's request for summary judgment dismissing B-50's claim for active inducement of patent infringement.

V

The court turns next to InfoSync's motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to strike the report of B-50's damages expert, Matthew W. Woodcock ("Woodcock").

- 19 -

A

The court decides defendants' *Daubert* motion in its role as a gatekeeper regulating the admissibility of expert testimony. *See, e.g., Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("[Fed. R. Evid.] 702 charges trial courts to act as 'gate-keepers'"). To be admissible under Rule 702, expert testimony must be both relevant and reliable. *See, e.g., id.* ("In short, expert testimony is admissible only if it is both relevant and reliable."). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-93). An expert must also be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rule 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

"Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 593). To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591). The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 & 592 n.10.

B

InfoSync contends that the court should strike Woodcock's damages report because he opines that B-50 is entitled to recover royalties at a rate of 3.5% of InfoSync's processing revenues, but he provides "no analysis or explanation as to how he finally arrived at the 3.5% royalty rate." D. 5-2-14 Br. 1. InfoSync maintains that, although Woodcock purports to reach his conclusion based on a consideration of 13 of the 15 factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970),[16] his report

---

[16]The *Georgia-Pacific* factors are:

> (1) royalties the patentee has received for licensing the patent to others; (2) rates paid by the licensee for the use of comparable patents; (3) the nature and scope of the license (exclusive or nonexclusive, restricted or nonrestricted by territory or product type); (4) any established policies or marketing programs by the licensor to maintain its patent monopoly by not licensing others to use the invention or granting licenses under special conditions to maintain the monopoly; (5) the commercial relationship between the licensor and licensee, such as whether they are competitors; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and license term; (8) the established profitability of the product made under the patent, including its commercial success and current popularity; (9) the utility and advantages of the patent property over old modes or devices; (10) the nature of the patented invention and the benefits to those who have used the invention; (11) the extent to which the infringer has used the invention and the value of that use; (12) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as opposed to its non-patented elements; (14) the opinion testimony of qualified experts; and (15) the results of a

- 21 -

provides no meaningful analysis of these factors, sets forth no factual basis that supports his opinion, and should be excluded.

B-50 responds that, because Woodcock's methodology—constructing a hypothetical negotiation based on the factors set forth in *Georgia-Pacific*—is a commonly used and acceptable method of estimating a reasonable royalty, and because the evidence on which Woodcock relies is based on specific facts and testimony generated in this case and previous license agreements involving the same patent, his report meets the threshold for admissibility.

C

Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *Id.* A reasonable royalty can be calculated using, *inter alia*, "the supposed result of hypothetical negotiations between the plaintiff and defendant." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1267 (Fed. Cir. 2013) (citations and internal quotation marks omitted). "'The hypothetical negotiation seeks to determine the terms of the license agreement the parties would have reached had they negotiated at arm's length when infringement began.'" *Id.* (quoting *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012)). The Federal

---

hypothetical negotiation between the licensor and licensee.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 n.3 (Fed. Cir. 2010).

Circuit "ha[s] consistently upheld experts' use of a hypothetical negotiation and *Georgia-Pacific* factors for estimating a reasonable royalty." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001)), *aff'd*, ___ U.S. ___, 131 S.Ct. 2238 (2011); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue.").

InfoSync does not contest Woodcock's qualifications to testify as an expert. Nor does it challenge the relevance of his opinions. Instead, it attacks only the reliability of Woodcock's report, contending that it is not grounded in a proper analysis or factual basis. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Woodcock's methodology—which relies on the *Georgia-Pacific* factors to construct a hypothetical negotiation between B-50 and InfoSync—is neither unreliable nor irrelevant. *See i4i Ltd. P'ship*, 598 F.3d at 854. Because B-50 has not established that the opinions in Woodcock's

- 23 -

expert report are unreliable or irrelevant, the court denies InfoSync's motion to strike the report.

* * *

For the reasons explained, the court denies B-50's motion and supplemental motion for partial summary judgment, denies InfoSync's motion for partial summary judgment, grants in part and denies in part InfoSync's supplemental motion for partial summary judgment, and denies InfoSync's motion to strike the report of B-50's damages expert.

**SO ORDERED**.

October 7, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE